**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RODRIGO MONTOYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:20-CV-01108-AGF |
| | ) | |
| SLOAN VALVE COMPANY, d/b/a | ) | |
| FLUSHMATE, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COTTLEVILLE VENTURES, L.L.C., | ) | |
| | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**MEMORANDUM AND ORDER**

The matters are now before the Court on Third-Party Defendant Cottleville

Ventures, L.L.C's motion to exclude expert testimony, Plaintiff Rodrigo Montoya's

motion to exclude expert testimony, and the related motions to seal in this personal injury

lawsuit invoking the Court's diversity jurisdiction.  For the reasons set forth below, each

motion will be granted in part and denied in part.

**BACKGROUND**

Plaintiff Rodrigo Montoya filed this action against Defendant Sloan Valve

Company, d/b/a Flushmate, in August 2020, asserting claims of strict product liability

and negligence, after a toilet tank containing a pressure valve manufactured by Sloan

exploded while Plaintiff was installing it, causing the lid to strike Plaintiff in the face,

resulting in multiple fractures to his jaw, lacerations to his chin, and several broken teeth. The pressure valve in question had been the subject of a product recall and distribution of repair kits to customers, initiated in June 2012 and expanded in January 2014.

Third-party Defendant Cottleville Ventures owned the business premises where the incident occurred.  Cottleville had received repair kits in April 2014, but never installed one in the subject tank, which had been placed in storage for several years.  In April 2020, Cottleville hired Plaintiff, a longtime handyman for the business, to reinstall the tank.  After Plaintiff installed the tank and reconnected the supply line, the valve failed and the tank exploded as Plaintiff stood over it.

Sloan filed a third-party complaint against Cottleville asserting (1) contributory negligence and indemnification for Cottleville's failure to install the repair kit and failure to inform Plaintiff about the recall or the dangerous condition, and (2) negligence per se for Cottleville's alleged violation of county and city ordinances requiring licensed plumbers to obtain permits to perform the work that resulted in Plaintiff's accident.

**Expert Testimony of Dr. Chojecki**

As relevant to the present motion, Sloan seeks to offer the expert testimony of Dr. Gregory S. Chojecki, Ph.D., a chemical and materials engineer, who would opine about the likely cause of the rupture incident, the recalls and repair kits related to the subject product, that Sloan was not aware of any risks of rupture of the subject product (specifically this generation) at the time of its manufacture, and that Plaintiff's injuries may have been avoided had Cottleville installed a repair kit.  Chojecki has a master's degree in chemical engineering, a doctorate degree in materials science and engineering,

2

and eight years' experience as a chemical and materials analyst.  To arrive at his

opinions, Chojecki reviewed discovery produced by the Defendants in this case as well as

case filings, deposition transcripts, and the reports of Plaintiff's liability expert, Jeffrey A.

Jansen, and Plaintiff's damages expert, Robert W. Johnson.  Chojecki ultimately arrived

at nine distinct conclusions in his report based on his review and analysis of the data, but

only six conclusions are at issue.[1]  These six opinions are discussed below.  (Doc. No.

110-1.)

(1) Chojecki opines that "Cottleville Ventures, LLC decided against installing the

repair kits for their Flushmate III Power-Assist Flushing Systems."  He reached this

conclusion upon his review of the deposition testimony of Cottleville owner, Mr. M.K.

Reiter.  Cottleville has moved to exclude this testimony.

(2) Chojecki opines that "Cottleville knowingly continued to use a product that

was under recall for safety concerns."  Again, Chojecki appears to arrive at this

conclusion based on the deposition testimony of Mr. M.K. Reiter.  Cottleville has moved

to exclude this testimony.

(3) Chojecki opines that "[h]ad the repair kit been installed on the subject

Flushmate III at the time of the incident, the severity of [Plaintiff's] injuries, may have

been reduced if not eliminated."  Chojecki's report does not explain the basis for this

---

[1] Plaintiff originally challenged the opinion, "Flushmate had not received any reports of
an incident involving a third generation Flushmate III at the time the subject third
generation Flushmate III was manufactured on November 8, 2004."  Plaintiff has since
withdrawn its motion as to this opinion.  (Doc. No. 140 at p. 3).  As such, the Court will
deny as moot Plaintiff's motion with respect to that opinion.

opinion, but when questioned at deposition, Chojecki explained how the design and purpose of the repair kit would ideally reduce the effects of a rupture event which may have resulted in lesser injuries.  (Doc. No. 126-1 at p. 64).  Cottleville and Plaintiff have moved to exclude this testimony.

(4) Chojecki opines that "[t]here is a lack of information to suggest that Flushmate was aware of anticipated issues regarding a weld leak and/or separation of their Emabond joined Flushmate III as of November 8, 2004."  He explains that in or about June 2000, Flushmate switched from the vibration joining process to the Emabond joining process in order to improve the strength of the joint between the upper and lower halves of the Flushmate III vessel and to improve production consistency.  He further explains that an internal Reliability Advisory issued by Flushmate on July 24, 2000 regarding a vessel weld leak/separation was specific to vibration welded Flushmates, and as of November 8, 2004, there were only three incident reports regarding Emabond joined Flushmates, and these related only to the second generation Flushmate III.  Plaintiff has moved to exclude this opinion.

(5) Chojecki opines that "Flushmate was participating in continuous improvement activities throughout the life of the Flushmate III development."  He explained that Flushmate implemented a number of design changes to improve the strength of the weld and conducted several QA/QC tests to validate and monitor the quality of its products. Plaintiff has moved to exclude this testimony.

(6) Chojecki opines that "Flushmate did not knowingly manufacture, market, and sell Flushmate III Power-Assist Flushing Systems that they believed would rupture when

4

used for their intended purpose." He explains that this was deduced through a basic analysis of the different Flushmate generations as well as "specific examples that have been presented." Plaintiff has also moved to exclude this testimony.

**Parties' Arguments**

<u>Cottleville's Motion</u>

Cottleville moves to exclude Chojecki's testimony on the following grounds: (1) Chojecki's testimony that Cottleville decided against installing the repair kits for their tanks is an impermissible state-of-mind opinion; (2) Chojecki's testimony that Cottleville knowingly continued to use a product that was under recall for safety concerns is also an impermissible state-of-mind opinion; and (3) Chojecki's opinion that had the repair kits been installed, the severity of Plaintiff's injuries may have been reduced is outside the scope of Chojecki's expertise as a chemical and material science engineer. Plaintiff joins in Cottleville's motion.

In response to Cottleville's motion, Sloan states that (1) Chojecki will not opine as to Plaintiff's possible injuries, but will still offer testimony related to the repair kits' potential effects on a rupture event; (2) Chojecki will not offer any testimony that characterizes Cottleville's state of mind as having knowledge that the recall was specifically related to "safety concerns," but will still offer testimony related to Cottleville's knowledge of the recall; and (3) Chojecki is not offering state-of-mind testimony but merely factual context according to Cottleville's own representatives. Lastly, Sloan notes that any doubts regarding whether an expert's opinion will be useful should generally resolved in favor of admissibility, and requests that if the Court is

unsure about the admissibility, that it defer its ruling on the state-of-mind opinions until trial.

Plaintiff's Motion

Plaintiff also sets forth his own motion to exclude a number of Chojecki's opinions.  Plaintiff moves to exclude Chojecki's testimony on the following grounds: (1) Chojecki's testimony regarding Plaintiff's injuries is not based on reliable scientific principles or methodologies and is pure speculation, and (2) Chojecki's opinions regarding Sloan's knowledge or intent are impermissible state-of-mind opinions that lack a factual basis, are not derived from any reliable methodology, and are not helpful to the jury.

In response to Plaintiff's motion, Sloan states that (1) Chojecki's opinions are proper because they are based upon his review of the entire record, his application of scientific principles and his experience and knowledge, and because his opinions were given to a reasonable degree of scientific certainty; (2) Chojecki will not opine as to the injuries Plaintiff would have or could have sustained, but his testimony regarding the components of the repair kit and their application and function is proper and should not be excluded; (3) Chojecki's conclusions are based on the factual record, including deposition testimony of Sloan's representatives and to the extent such conclusions constitute state-of-mind testimony, they are permissible because they are relevant to an ultimate issue in the case, namely, Plaintiff's claim for punitive damages; and (4) Plaintiff's motion is unsupported by the record.

Additional facts and arguments are recited below as relevant to particular issues.

# DISCUSSION

## Legal Standards

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702.  *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which charged trial judges with a "gatekeeping" role to exclude unhelpful and unreliable expert testimony.

Factors relevant to the relevancy and reliability determinations include: "(1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community."  *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citations omitted).  Additional factors include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out

7

other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 687 (8th Cir. 2001).

"[T]he Daubert reliability factors should only be relied upon to the extent that they are relevant and the district court must customize its inquiry to fit the facts of each particular case." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (citations omitted); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141-42 (1999) ("the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.  Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability opinion."); *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (stating that the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject Daubert factors as the particular case demands").  The question is whether the expert's opinion is sufficiently grounded to be helpful to the jury.  *Unrein*, 394 F.3d at 1012.

Although the proponent of the expert testimony must prove its admissibility by a preponderance of the evidence, *Daubert*, 509 U.S. at 592, Rule 702 "is one of admissibility rather than exclusion."  *Shuck*, 498 F.3d at 874. (citations omitted).

**Analysis**

The first three conclusions challenged by Cottleville and Plaintiff will each be examined in turn to determine their admissibility.  The final three conclusions are challenged by Plaintiff on the same grounds, and as such they will be analyzed together.

8

(1) Cottleville Decided Against Installing the Repair Kits.

Cottleville seeks to exclude this testimony on the grounds that it is an impermissible state-of-mind opinion.  Cottleville further argues that Chojecki does not have the requisite expertise that would permit him to offer any testimony on Cottleville's state of mind.  Sloan argues that this opinion is not offered as Chojecki's "expert opinion" but rather is an undisputed fact of the case that was testified to in deposition by Cottleville's own representative.

Specifically, Chojecki's report states that Cottleville owner, Mr. M.K. Reiter decided against installing the repair kits because of tenant reports of poor flushing performance after its installation.  (Doc. No. 110-1 at p. 17).  Mr. M.K. Reiter's deposition confirms this.  (Doc. No. 125-3 at pp. 3-4).

An expert opinion is appropriate when the factual issue is one that the jury would not ordinarily be able to resolve without technical or specialized assistance.  Fed. R. Evid. 702; *Daubert,* 509 U.S. at 591; *Kumho Tire*, 526 U.S. at 156.  While an expert's opinion may address an ultimate issue of fact, "the courts must guard against invad[ing] the province of the jury on a question which the jury is entirely capable of answering without the benefit of the expert opinion."  Fed. R. Evid. 704(a); *Lee v. Andersen,* 616 F. 3d 803, 808-09 (8th Cir. 2010); *Robertson v. Norton Co.,* 148 F.3d 905, 908 (8th Cir. 1998).  Any doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.  *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 778 (8th Cir. 2021).

Sloan argues that Chojecki should not be precluded from merely reciting facts

derived from Cottleville's testimony.  The Court agrees that Chojecki may summarize his understanding of the factual backdrop based on his review of the documents provided to him when relevant to an admissible opinion.  However, here, Sloan fails to identify any disclosed opinion to which these facts are relevant.  Rather, Chojecki is summarizing deposition testimony and proffering it as an expert opinion.  Such opinion requires no specialized expertise from Chojecki, and he is no better position than the jury to offer such a conclusion.  *See Grover v. BMW of N. Am., LLC*, No. 1:19-CV-12, 2022 WL 205249, at *5 (N.D. Ohio Jan. 24, 2022) (excluding expert testimony "given that [an employee] testified directly on these matters, it is well within the ken of the factfinder to come to a conclusion themselves by reading the transcript or listening to [the] testimony...").  Moreover, experts generally cannot testify as to a party's state of mind. *See, e.g.*, *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 442 (E.D.N.Y. 2011).

It is well within the province of the jury to reach this conclusion, and Chojecki's opinion will not assist the jury.  Therefore, Chojecki's opinion that Cottleville decided against installing the repair kits will be excluded.

(2) Cottleville Knowingly Used a Product That Was Under Recall for Safety Concerns.

Cottleville seeks to exclude Chojecki's opinion and testimony that Cottleville knowingly used a product that was under recall, on the grounds that is an impermissible state-of-mind opinion.  Sloan sets forth the same arguments regarding this opinion as above; it is not offered as an "expert opinion" but is an undisputed fact of the case, as

testified to by Cottleville owner, Mr. M.K Reiter, in his deposition.[2]  Sloan acknowledges that Cottleville has denied that it had knowledge as to the specific reason for the recall and agrees that Chojecki will not give testimony that characterizes Cottleville as having knowledge that the recall was related to "safety concerns."  However, Sloan still offers Chojecki's testimony as to Cottleville's knowledge of the recall in general and that the recall was in fact related to safety concerns.

Similar to the opinion above, Sloan does not identify any disclosed opinion to which these facts are relevant.  Chojecki again offers a free-standing summary of deposition testimony.  This opinion requires no specialized expertise from Chojecki and it is well within the province of the jury to conclude.  Chojecki's opinion that Cottleville knew of the recall will be excluded.

(3) <u>Had the Repair Kit Been Installed, the Severity of Plaintiff's Injuries May Have Been Reduced, if Not Eliminated.</u>

Cottleville seeks to exclude Chojecki's testimony that the installation of the repair kit may have reduced or eliminated Plaintiff's injuries, on the grounds that it is outside the scope of Chojecki's expertise as a chemical and material science engineer and is not supported by the evidence.  In response, Sloan acknowledges that Chojecki will not opine at trial as to the injuries Plaintiff would have or could have sustained.  However, Sloan then sets forth a different, clarified opinion that Chojecki gave during his deposition

---

[2] In deposition, Mr. M.K. Reiter stated that he was unaware of the recall but, upon prompting by counsel, Reiter remembered that a tenant informed him of the recall issue and Reiter then informed his staff.  (Doc. No. 121-3).

(Doc. No. 127-1 at p. 64) regarding the use and purpose of the repair kit and how the repair kit would ideally reduce the potential effects of a rupture event, and as such asks that Chojecki be permitted to testify on this clarified opinion.

Plaintiff also seeks to exclude the original testimony on the grounds that it is a conjectural and irrelevant causation opinion, not based on any scientific principles or methodologies, and is not given within a reasonable degree of probability or to a reasonable degree of engineering certainty.

In response to Plaintiff, Sloan again acknowledges that Chojecki will not opine at trial as to Plaintiff's injuries and offers Chojecki's clarified opinion.  However, Sloan then argues that Chojecki should be permitted to testify in the form of a hypothetical that, if the repair kit had been installed and had performed consistently with Sloan's third-party consultant Exponent's testing of the repair kits, then the repair kit could have or would have contained the separation event enough to prevent Plaintiff from being struck with pieces of the vessel.

The Federal Rules of Evidence "grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'"  *Kumho Tire*, 526 U.S. at 148.  When the factual basis, data, principles, methods, or their application are called into question, the court must determine whether the testimony has a "reliable basis in the knowledge and experience of [the relevant] discipline."  *Daubert*, 509 U.S. at 592.

As part of its gatekeeping function, a court must not allow an expert to testify to matters beyond the scope of his expertise.  *Wheeling Pittsburgh Steel Corp. v. Beelman*

12

*River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).  In this case, Chojecki's

experience extends to chemical engineering and materials science, but it does not extend

to opining on Plaintiff's injuries, including in the form of a hypothetical.  Sloan

acknowledges this, and has agreed it will not offer Chojecki's testimony regarding the

severity or possibility of Plaintiff's injuries.

The clarified opinion offered by Sloan from Chojecki's deposition testimony states

as follows:

> What I would be testifying to is the fact that the repair kit was a two-
> part repair kit, which contained an external regulator and the metal U band
> with the intent that the external regulator would reduce the pressure in the
> tank, therefore, reducing the overall amount of stored energy that could be
> released in a rupture event, as well as the metal U band being present which
> would help to contain a rupture event and ideally reduce the potential
> effects of a rupture event. And the support for that would come through
> several specific pages, but they are contained with the Exponent report
> which discusses the development and testing of that particular repair kit
> through the corrective action plan.

(Doc. No. 127 p. 5; Doc. No. 127-1 at p. 64).

In reply, Plaintiff argues that "Sloan cannot invent new opinions for Chojecki

during *Daubert* briefing which he himself has not even indicated he holds, and which he

was not questioned about."  (Doc. No. 140 at p. 7).  But Sloan's argument is refuted by

the record.  The clarified opinion of Chojecki offered in Sloan's opposition is a direct

quote from Chojecki's deposition by Plaintiff and Cottleville on January 20, 2022.  (Doc.

No. 127-1).

The Court acknowledges that a written report of an expert submitted pursuant to

Rule 26(a) must contain, "a complete statement of all the opinions the witness will

express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  If a party

fails to provide information required by Rule26(a) and does not provide supplemental

information pursuant to Rule 26(e), "the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).

　　　　Rule 26 disclosures are intended to provide opposing counsel a reasonable

opportunity to prepare for cross-examination and prepare controverting expert witnesses.

Fed. R. Civ. P. 26(a)(2), 1993 advisory committee notes.  Thus, the Court's principal

concern is determining whether Chojecki's expert report gave the parties sufficient notice

of the anticipated expert testimony and the opportunity to appropriately respond.  As the

Sixth Circuit has explained, "Section 26(a)(2)(B) does not limit an expert's testimony

simply to reading his report…[t]he rule contemplates that the expert will supplement,

elaborate upon, explain and subject himself to cross-examination upon his report."

*Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).

　　　　The testimony at issue is just that, Chojecki's explanation of a conclusion in his

report.  The original opinion proffered in Chojecki's report states, "Had the repair kit

been installed on the subject Flushmate III at the time of the incident, the severity of Mr.

Montoya's injuries, may have been reduced, if not eliminated."  (Doc. No. 110-1 at p. 6).

Counsel for Cottleville asked Chojecki to clarify this opinion during his deposition,

where counsel for Plaintiff was also present.  The resulting deposition testimony

explaining his testimony is what Sloan is offering in their opposition.  As such, this

opinion is not "invented by Sloan" nor is it "new" as Plaintiff claims.  Plaintiff had

14

sufficient notice of this testimony and will not be prejudiced by its inclusion.  As such, the proffered testimony need not be excluded under Fed. R. Civ. P.  26.  Additionally, this opinion is relevant to a fact at issue in the case and well within Chojecki's expertise.

Therefore, Plaintiff's motion with respect to this conclusion will be granted in part and denied in part.  Chojecki may not testify regarding Plaintiff's injuries, but the clarified opinion in Sloan's opposition will be allowed.

(4) Plaintiff's Remaining Challenges

Plaintiff seeks to exclude the final three opinions on the grounds that they fail to adhere to any discernable methodology, lack a factual basis, and are impermissible state-of-mind opinions.  In opinion no. 4, Chojecki concludes that there is a lack of information to suggest that Flushmate was aware of anticipated issues regarding the subject product model.  In opinion no. 5, Chojecki concludes that Flushmate was participating in continuous improvement activities.  Lastly, in opinion no. 6, Chojecki concludes that Flushmate did not knowingly manufacture, market, and sell systems that they believed would rupture when used for their intended purposes.

The Court disagrees that these opinions fail to adhere to a discernable methodology and lack a factual basis.  However, the Court will exclude these opinions in part to the extent that they opine on a party's state of mind and invade the province of the jury.

**Methodology**

Plaintiff argues that Chojecki's methodology of reviewing the documents provided by Sloan to form his opinions is not a reliable methodology and renders his testimony

15

inadmissible.  Chojecki describes his methodology as, "in accordance with *The Scientific Method* and applicable principles…includ[ing] the comprehensive, objective, and accurate compilation and analysis of the available data."  (Doc. No. 110-1 at p. 6).  His report further certifies that his opinions were based on "reliable principles and scientific methodologies to all the facts known…as well as knowledge, skill experience, training and/or education."  *Id.* at p. 7.

The methodology utilized by Chojecki is permissible.  It is well recognized that "observations coupled with expertise generally may form the basis of an admissible expert opinion."  *Shuck*, 498 F.3d at 875; *see Kumho Tires*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *see also Reid v. BMW of N. Am.*, 430 F. Supp 2d 1365, 1370 (N.D. Georgia 2006) ("In a products liability case, a technical field like engineering often relies on more idiosyncratic methods of design and testing.  Therefore, it is more common that engineering experts state that their opinions are not based upon any scientific method but on general experience and knowledge after a review of evidence.") (citations omitted); *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2020 WL 7318087, at *4 (E.D. Texas, Dec. 11, 2020) (finding that the expert "utilized a reliable methodology in reaching his conclusion – namely, coupling his experience and knowledge with a review of various internal documents…").

The Court finds that the majority of Chojecki's testimony will help the jury synthesize the voluminous history and records related to Sloan's development of the Flushmate device and assist the jury in distilling the technical and scientific information

16

related to such development.  In sum, Chojecki utilized a widely recognized and permissible methodology in reaching his conclusions.

### Factual Basis

Plaintiff argues that Chojecki's opinions lack a factual basis, or in other words, are unreliable.  The "screening requirement" of Rule 702 has been reduced to a three-part test: (1) the testimony must be useful to the fact-finder in deciding the ultimate issue, i.e., it must be relevant; (2) the expert must be qualified to assist the fact-finder; and (3) the testimony must be reliable or trustworthy in an evidentiary sense.  *Bair Hugger*, 9 F.4th at 777.

With respect to the third requirement, "[t]he standard for judging the evidentiary reliability of expert evidence is lower than the merits standard of correctness."  *See Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (citation omitted).  Although "the focus of the reliability inquiry 'must be solely on principles and methodology, not on the conclusions that they generate, . . . conclusions and methodology are not entirely distinct from one another.'"  *Bair Hugger*, 9 F.4th at 777 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  In particular, "a district court may exclude expert testimony if… it is so fundamentally unsupported by its factual basis that it can offer no assistance to the jury."  *Id*. at 778 (internal citations omitted).

Proposed expert testimony "must be supported by appropriate validation—i.e., good grounds, based on what is known"; expert "knowledge connotes more than subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590 (citation omitted).  However, "[v]igorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007) (citing *Daubert*, 509 U.S. at 596). And any "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark ex rel. Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).

In support of his argument, Plaintiff cites various excerpts from Chojecki's deposition testimony, arguing that he is contradicting his own opinions. Upon review of Chojecki's report and testimony, the Court disagrees that the alleged discrepancies undermine or contradict Chojecki's conclusions. Again, *Daubert* and FRE 702 do not invite the courts to decide that testimony is right or wrong or to displace the adversary system. *See Daubert* at 596. These matters are best left to cross-examination.

Plaintiff also argues that Chojecki's opinions lack factual basis because he fails to cite to specific documents in his report and deposition testimony. Notably, Plaintiff does not claim that the underlying facts are unreliable, that Chojecki's summary of the facts is inaccurate, or that his opinion is an unsubstantiated leap of logic. Additionally, Plaintiff does not offer any legal authority to support his argument that Chojecki's opinion may be excluded due his lack of citations, nor was this Court able to find any relevant authority on the matter.

With respect to these particular objections, the Court finds that Chojecki's opinions are, at worst, within the "shaky but admissible" category referenced by the Eighth Circuit. *See U.S. v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003). Sloan's remedy on these bases is not exclusion, but rather vigorous cross-examination, the presentation of

18

contrary evidence and careful instruction on the burden of proof.  *Id.*

### Corporate State of Mind

District courts in this circuit appear to be agreement that "[e]xpert testimony on the 'intent, motives, or state of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.'"  *See, e.g., Kruszka v. Novartis Pharm. Corp.*, 28 F. Supp. 3d 920, 937 (D. Minn. 2014) (quoting *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d at 442); *Lafarge N. Am., Inc. v. Discovery Grp., L.L.C.*, No. 05-1110-CV-W-FJG, 2010 WL 3025120, *7 (W.D. Mo. July 30, 2010) (agreeing with the plaintiff's argument that such testimony is "inherently unreliable, based on speculation and conjecture rather than fact and informed expert opinion"); *Neuharth v. NACCO Materials Handling Grp., Inc.*, No. CIV. 01–4034–KES, 2002 WL 34700601, *5 (D.S.D. Dec. 17, 2002) ("Both parties agree that an expert in a products liability case should not be allowed to speculate regarding a manufacturer's motives or purposes. *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998).").

While expert testimony that directly opines about a party's state of mind is inadmissible, an expert may opine about the observable, underlying facts relevant to determining an entity's intent.  *See In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 930 (D. Minn. 2020); *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003(WMW/DTS), 2021 WL 101193, at *15 (D. Minn. Jan. 12, 2021).

With respect to opinion no. 4 ("there is a lack of information to suggest that Flushmate was aware of anticipated issues regarding a weld leak and/or separation of their Emabond joined Flushmate III as of November 8, 2004) and opinion no. 6

19

("Flushmate did not knowingly manufacture, market, and sell Flushmate III Power-Assist Flushing Systems that they believed would rupture when used for their intended purpose"), the Court agrees that these conclusions constitute impermissible state-of-mind opinions.

Sloan argues that these opinions are permissible because evidence regarding its knowledge and state of mind are relevant to Plaintiff's punitive damages claim under his claims of strict products liability.  Additionally, with respect to opinion no. 6, Sloan explains that "[e]xperts are widely permitted to testify about a party's conduct from which the jury can infer that party's knowledge, state of mind or intent, where relevant to the ultimate issues." (Doc. No. 127 at p. 7) (citing *Tilton v. Capital Cities/ABC, Inc.*, 938 F. Supp. 751 (N.D. Okla. 1995).

The Court does not disagree.  As discussed above, an expert may testify about the underlying facts relevant to determining an entity's intent but an expert may not directly opine about their state of mind.  *See Fesenmaier,* 2021 WL 101193 at *15.  In these opinions, however, Chojecki directly opines on Sloan's knowledge and belief.

As such, Chojecki is permitted to testify to the underlying facts he relied on in forming these opinions and perhaps whether particular results would generally provide notice of a design defect.  But he will not be able be permitted to directly opine about Sloan's knowledge, awareness, or intent.

**Invading Province of the Jury**

Plaintiff also seeks to exclude opinion no. 5 ("Flushmate was participating in continuous improvement activities throughout the life of the Flushmate III development")

on the grounds it is an impermissible state-of-mind opinion.  Sloan argues that Chojecki's conclusion contains no opinion as to the state of mind, intent, or knowledge of Sloan. While this specific testimony does not contain impermissible state-of-mind opinions, whether it meets the helpfulness requirement under FRE 702 is a closer call.

Chojecki's report discusses numerous testing endeavors, evaluations, design changes, and internal targets in support of his conclusion that "Flushmate was participating in continuous improvement activities throughout the life of the Flushmate III development."  (Doc. No. 110-1 at pp. 21-22).  His fact-based examples discuss the changes made throughout the development of the Flushmate III generations, what those changes were in response to, and how those changes affected the design and burst pressure of the Flushmate III.  From that testimony alone, the jury could make the determination that Flushmate was engaging in continuous improvement activities.

Chojecki's ultimate conclusion invades the province of the jury and as such will be excluded.  However, he may still testify to the underlying facts in support of this conclusion.

RELATED MOTIONS TO SEAL

Upon review of the parties' responses to the Court's order regarding the sealed documents (Doc No. 129), the review of the documents proposed to remain sealed, and the considerations set forth in Local Rule 13.05, the Court will unseal Doc. Nos. 110, 125, 125-2, 125-3, 126, 127, and 131.  The parties have agreed that these documents should not be sealed or otherwise have not established why sealing is warranted. However, the Court will allow Doc Nos. 110-1, 110-2, 125-1, and 127-1, which appear to

contain confidential information, and redacted versions of which have been filed in the open record, to remain sealed.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Cottleville's motion to exclude certain testimony of Sloan's expert witness Gregory Chojecki is **GRANTED in part and DENIED in part** as set forth herein.  (Doc. No. 107).

**IT IS FURTHER ORDERED** that Plaintiff's motion to exclude certain testimony of Sloan's expert witness Gregory Chojecki is **GRANTED in part** and **DENIED in part** as set forth herein.  (Doc. No. 110).

**IT IS FURTHER ORDERED** that Sloan's motion to file documents under seal is **GRANTED in part** and **DENIED as moot in part** as follows (Doc No. 124):

1.  Sloan's Motion to Seal Doc Nos. 125, 125-2, 125-3, 126, and 127 under seal is **DENIED as moot**.  The Clerk of the Court is directed to unseal these documents.

2.  Sloan's motion to file Doc. Nos. 125-1 and 127-1 under seal is **GRANTED**. These documents shall remain under seal.

**IT IS FURTHER ORDERED** that Plaintiff's motion to file documents under seal is **DENIED**.  The Clerk of Court is directed to unseal Doc. No. 131.

**IT IS FINALLY ORDERED** that in accordance with the above ruling, the Clerk of Court is directed to unseal Doc. No. 110.  However, the attachments thereto (Doc. Nos. 110-1 and 110-2) shall remain under seal.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2022.